

FILED

JUL 1 9 2019

Clerk, U.S. District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ANDREW DAVID GOLIE, | Cause No. CV 17-127-M-DLC-JCL |
| Petitioner, | |
| vs. | FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| ATTORNEY GENERAL OF THE STATE OF MONTANA, | |
| Respondents. | |

This case comes before the Court on state pro se Petitioner Andrew David Golie's application for writ of habeas corpus under 28 U.S.C. § 2254.

Golie challenges a 2012 conviction out of Montana's Twenty-First Judicial District, Ravalli County, for Felony Tampering with a Witness. Golie was subsequently designated a Persistent Felony Offender and received a prison sentence of twenty years with a five of those years suspended. (Doc. 1 at 2-3.)

Golie filed the present petition on September 14, 2017, but was subsequently ordered to file an Amended Petition. Golie timely complied, filing an Amended Petition and Supplement. (Docs. 6 & 7.) Because it was unclear to the Court whether or not Golie intended the claims contained in his Supplement to be stand-alone habeas claims, and because it appeared the claims were procedurally defaulted, Golie was ordered to explain the nature of the claims and/or to show

1

cause as to why they should not be dismissed. Golie timely responded advising the Supplement was intended to provide additional information and history to his Amended Petition and the items presented in the Supplement were not to be construed as independent habeas claims. See, (Doc. 10 at 2.)[1] Accordingly, this Court will consider only those claims contained in Golie's Amended Petition.

## I.   Factual History

In January of 2011, a pawn shop in Hamilton, Montana, was burglarized. A unique necklace with a broken clasp was one of the items taken.[2] The owner of the pawn shop, Dodd, made a report to authorities. Law enforcement responded, but no suspect was identified. In March of 2011, Josh Edmondson came to the pawn shop and attempted to sell the necklace with the broken clasp; Dodd contacted law enforcement. Dodd reported that when he confronted Edmondson about the necklace being stolen, Edmondson stated that a friend named Andrew had given

---

[1] Golie subsequently filed an out-of-time brief, which did not address the issue of procedural default, but instead asked the Court to consider the supplemental claims and to consider yet-to-be filed documents, filed in a "friend of the court" capacity, from Robert Myers. See, (Doc. 11.) The Court received no such documents. But because the brief was not filed in a timely manner, the Court will not consider it.

[2] The following factual summary is taken from the Montana Supreme Court's opinion in State v. Golie, 2013 MT 321N, and is presumed correct. 28 U.S.C. §2254(d)(2), (e)(1). Golie does not present clear and convincing evidence to the contrary, thus, the Court adopts the factual recitations set forth by the state court. See, Vasquez v. Kirkland, 572 F. 3d 1029, 1031, n.1 (9th Cir. 2009) ("We rely on the state appellate court's decision for our summary of the facts of the crime.").

him the necklace, but that he did not know Andrew's last name.

Edmondson then contacted Golie who admitted the necklace was stolen and advised Edmondson he was stupid for attempting to pawn it. At 10:30 p.m. the following evening, Golie appeared at Edmondson's house, accompanied by another individual, Wilkins. Golie told Edmondson to confess that he stole the necklace. Golie reminded Edmondson that he knew where Edmondson's child slept, where Edmondson's dog slept, and where Edmondson lived. Fearing for his family's safety, Edmondson contacted law enforcement.

## II.   Procedural History

Golie was charged with felony Intimidation and felony Tampering with Witnesses and/or Informants. Golie was represented by attorney, Sasha Brownlee. Following a jury trial, Golie was acquitted of Intimidation, but convicted of Witness Tampering.

Golie appealed arguing that Brownlee was ineffective for failing to object to the State's mental state instruction for Witness Tampering. Golie asserted a result-based mental state instruction, rather than a conduct-based instruction, was required.[3] In affirming Golie's conviction, the Montana Supreme Court determined the claim was not appropriate for direct appeal, because the record did not allow for an adequate review of the claim, but that the claim might be pursued

---

[3] *See e.g., State v. Golie*, DA 12-0454, Appellant's Op. Br. (filed August 12, 2013).

in postconviction proceedings. *See, State v. Golie*, 2013 MT 321N, No. DA 12-0454 (Mont. Oct. 29, 2013).[4]

Golie subsequently filed a petition for postconviction relief alleging eight instances of ineffective assistance of trial counsel. The state district court issued a lengthy written order analyzing and denying each of the claims.  Golie appealed the denial of four of the claims.

On appeal, Golie alleged Brownlee provided ineffective assistance of counsel in the following respects: (1) by not objecting to the mental-state jury instruction; (2) by not objecting to evidence regarding Golie's purported affiliation with the "Modern Outlaw" gang; (3) by revealing to the jury that Golie was on probation; and, (4) by not objecting to Detective Murphy vouching for the credibility of other witnesses. *See generally, Golie v. State*, DA 16-0207, Op. Br. of Appellant (filed Dec. 12, 2016).  The Montana Supreme Court concluded the state district court did not err in denying Golie's ineffective assistance of counsel claims. *See, Golie v. State*, 2017 MT 191, 388 Mont. 252, 399 P. 3d 892.

III.   **Golie's Claims**

In his Amended Petition, Golie raises the same claims that he presented in his postconviction appeal.  Golie alleges Brownlee provided ineffective assistance

---

[4] All state court briefing and opinions available at: https://supremecourtdocket.mt.gov/ (accessed July 17, 2019).

by: (1) failing to request a "result-oriented" jury instruction on the tampering charge (Doc. 6 at 3, ⁋ 15(A); 8-9); (2) failing to object to Golie's purported affiliation with "Modern Outlaw" (*id.* at 6, ⁋ 15(B); (3) failing to object to Detective Murphy's vouching testimony (*id.* at 5, ⁋ 15(C); and, (4) referencing Golie's prior DUI and probationary status; (*id.* at 6, ⁋ 15(D). Golie also claims cumulative error resulted. *Id.* at 9.

## IV.   Analysis

The ineffective assistance of counsel (IAC) claims in Golie's Amended Petition were fairly presented to the state courts and denied on the merits. Accordingly, this Court's consideration of the claims is constrained by the applicable standard of review.[5]

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that a federal habeas court may not grant relief to a state prisoner whose claim has already been "adjudicated on the merits in State court," 28 U.S.C. § 2254(d), unless the claim's adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by [this] Court," § 2254(d)(1), or "based on an unreasonable determination of the facts in light of the evidence presented in the State court

---

[5] Golie's fifth claim, alleging cumulative error, was not presented to the state courts and is, therefore, procedurally defaulted. Nonetheless, the claim is addressed herein.

proceeding," § 2254(d)(2); see also, *Johnson v. Williams*, 568 U.S. 289, 292 (2013). AEDPA substantially limits the power of federal courts to grant habeas relief to state prisoners, *Hurles v. Ryan*, 725 F. 3d 768, 777 (9th Cir. 2014), and "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). Thus, if a petitioner's claim has been "adjudicated on the merits" in state court, "AEDPA's highly deferential standards kick in." *Davis v Ayala*, __ U.S. ___, 135 S. Ct. 2187, 2198 (2015) (citations omitted).

As set forth above, Golie claims trial counsel, Brownlee, provided ineffective assistance in various ways. The clearly established federal law for ineffective assistance of counsel claims was determined by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the two-pronged framework of *Strickland*, the Sixth Amendment guarantee of the right to counsel in a criminal proceeding is violated if "counsel's performance was deficient" and "the deficient performance prejudiced the defense." 466 U.S. at 687. To establish deficient performance, petitioner must demonstrate that counsel's representation fell below and objective standard of reasonableness under prevailing professional norms. *Id.* at 688; see also, *Yarborough v. Gentry*, 540 U.S. 1 (2003)(per curiam). To establish that counsel's deficient performance prejudiced the defense, petitioner must show "that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792. "Only those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial." *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

Both prongs of the *Strickland* test must be satisfied to establish a constitutional violation; failure to satisfy either prong requires that an ineffective assistance claim be denied. *Id.*, at 697 (no need to address deficiency of performance if prejudice is examined first and found lacking); *Rios v. Rocha*, 299 F. 3d 796, 805 (9th Cir. 2002)("Failure to satisfy either prong of the *Strickland* test obviates the need to consider the other.").

In assessing a claim that counsel's representation did not meet the constitutional minimum, the court is to "indulge in a strong presumption that counsel's conduct f[ell] within the wide range of professional assistance." *Id.* at 689. Petitioner bears the burden of showing the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner. See, *Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

This Court's review of the Montana Supreme Court's determination that

7

Golie's counsel did not perform deficiently is "doubly" deferential, because

*Strickland* requires state courts to give deference to choices made by counsel, and

AEDPA, in turn, requires this Court to defer to the determinations of state courts.

*Harrington v. Richter*, 562 U.S. 86, 105 (2011)(quoting *Knowles v. Mirzayance*,

556 U.S. 111, 123 (2009)).  As explained below, Golie's claims do not survive

deferential review; his petition should be denied.

### i.    Claim 1- Failure to Object to Jury Instruction

On appeal from the denial of his PCR petition, Golie claimed counsel was

ineffective for not objecting to the conduct-based mental state instruction provided

to the jury.  The Montana Supreme Court explained the claim further:

> The District Court instructed the jury that a person "acts knowingly
> when the person is aware of his conduct," and "acts purposely when it
> is the person's conscious object to engage in conduct of that nature."
> Golie claims that Brownlee was ineffective by not objecting to these
> conduct-based instructions, because witness tampering is a result-
> based offense that criminalizes causing someone to "testify or inform
> falsely" or "withhold any testimony, information, document or thing,"
> which are results.  Golie argues the statute does not particularize
> conduct, which could be a wide variety of actions, but rather
> particularizes results, and required result-based mental state
> instructions.

*Golie v. State*, 2017 MT 191, ¶13.  The Montana Supreme Court noted that in the

case upon which Golie relied, *State v. Lambert*, 280 Mont. 231, 929 P. 2d 846

(1996), the Court held the trial court erred by giving the jury an instruction

defining "knowingly" as a conduct-based mental intent offense in a Criminal

Endangerment trial, because that offense "emphasizes result over conduct." *Id.* at

¶14. The Court cited to *Lambert* to further explain:

> The portion of the [criminal endangerment statute] that we are reviewing
> here does not particularize the conduct that, if engaged in, results in the
> commission of the offense. Rather, a person may engage in a wide variety
> of conduct and still commit the offense of criminal endangerment, provided
> that the conduct creates a substantial risk of death or serious bodily harm. *It
> is the avoidance of this singular result*, the risk of death or serious harm, that
> the law attempts to maintain.

*Id.*, citing *Lambert*, 280 Mont. at 236, 929 P. 2d at 849 (emphasis in original). The

Court noted that if one does not create the result of a substantial risk of death or

serious bodily injury, one has not committed the crime of Criminal Endangerment.

*Id.* Conversely, the Court explained that Witness Tampering,[6] criminalizes

conduct and not a result. That is, when one believes an official investigation to be

pending, the statute criminalizes an *attempt* to "induce or otherwise cause a witness

or informant" to lie, withhold information, elude process, or fail to appear. *Id.* at

¶15. The Court reasoned that the crime does not require a witness to actually be

---

[6] Under Mont. Code. Ann. §45-7-206: A person commits the offense of tampering
with witnesses and informants if, believing that an official proceeding or
investigation is pending or about to be instituted, the person purposely or
knowingly attempts to induce or otherwise cause a witness or informant to:
  (a) testify or inform falsely;
  (b) withhold any testimony, information, document, or thing;
  (c) elude legal process summoning the witness or informant to testify or supply
      evidence; or
  (d) not appear at any proceeding or investigation to which the witness or
      informant has been summoned.

induced to carry through with the action, therefore, a particular result is not criminalized. *Id.* Or, put another way, there is no requirement that a particular result actually be achieved. *Id.* Accordingly, the Court determined because the conduct-based instructions given in Golie's case were proper, Brownlee did not perform deficiently by failing to object. *Id.* at ¶16.

Golie maintains his disagreement with the Montana Supreme Court's decision arguing that tampering is "clearly a result-based offense" and that the jury was erroneously instructed that he could be found guilty solely on the premise of his conduct and not upon the fact that he intended a specific result. (Doc. 6 at 3, ¶15(A)). Golie posits that under these instructions, anyone who unintentionally or unwittingly displayed conduct which influenced someone to not testify or to withhold information could be found guilty. *Id.*; see also, "Appendix A," (Doc. 6 at 8-9.)

As a preliminary matter, this Court must defer to the Montana Supreme Court's determination that the proper instruction was given. See e.g., *Engle v. Isaac*, 456 U.S. 107, 119-21, n. 21 (1982)(stating that a challenge to the correctness of a self-defense instruction under state law provides no basis for federal habeas relief). This Court lacks the authority to grant habeas relief regarding Golie's challenge to the Tampering instruction because the manner in which a state court interprets its own law is an issue of state law. 28 U.S.C. §2254;

see also, *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)(a state court's interpretation of state law binds a federal court sitting in habeas review), *Mitchell v. Goldsmith*, 878 F. 2d 319, 324 (9th Cir. 1989)(habeas relief unavailable for petitioner's claim that jury instruction did not comply with state law).

Because this Court must defer to the Montana Supreme Court's ruling that the proper jury instructions were given, there is no manner in which Golie can then demonstrate that Brownlee performed deficiently for failing to object to the instructions.  Accordingly, Golie cannot meet his burden; this claim should be denied.

### ii.    Claim 2- Failure to Object to "Modern Outlaw" Reference

During trial, Edmondson's wife testified that when Golie appeared at their home, he stated, "I'm not getting in trouble for this, so you better figure out how to fix it because I have people in this town that I know and I have brothers that you know what we're capable of." See, *Golie*, 2017 MT 191, ¶18.  This was the first mention of Golie's "brothers."  On redirect, Golie's wife, Shawna Cantrell, addressed the issue of Golie's "brothers," and explained that he had only one biological brother, but that he referred to his friends as "brothers." *Id*.  When asked about "Modern Outlaw," Shawna stated it was a "family of people." *Id*.  Detective Murphy testified that he had heard Golie refer to people as "brothers" and that he

11

had listened to a number of phone calls Golie made while incarcerated. *Id.* at ¶19. During the calls he also referenced "brothers" and "Modern Outlaw." Murphy testified he understood these statements to reference a "sort of group or association or gang." *Id.* Brownlee did not object to testimony related to "brothers" or "Modern Outlaw," but did question Golie about the references during direct examination. Golie denied being involved with a gang and explained the term "Modern Outlaws" was one he had used in the past in conjunction with performing music.

Golie contended Brownlee was deficient for failing to object to these references. He claimed he was prejudiced because the references eroded the presumption of innocence and encouraged the jury to find him guilty based upon a purported gang affiliation. The state contended the evidence was proper because Golie was the first to use the term "brothers" during the confrontation at the Edmondson's home and was, therefore, probative of Golie's attempt to influence them. *Id.* at ¶21.

The Montana Supreme Court determined Golie's reference to "brothers" during his confrontation with the Edmondson's made it a permissible area of inquiry. *Id.* at ¶22. The Court noted no testimony or evidence was offered to associate Golie with gang activity or membership and that both Golie and his wife testified Golie was not a gang member. Further, no rebuttal testimony was offered

12

in relation to Golie's assertion that "Modern Outlaw" referred to his involvement in music. *Id.* Thus, the Court determined Brownlee's decision not to object to this line of inquiry, but instead offer explanatory testimony straight from Golie, fell within the range of reasonable professional conduct. *Id.*

Golie asserts Brownlee's failure to object constituted ineffective assistance because prejudicial evidence and testimony regarding "Modern Outlaw" and gang affiliation was "allowed to be revealed to the jury over and over again." (Doc. 6 at 4, ¶14(b)). Further, Golie contends this had nothing to do with the charges, facts or the case, allegations, or evidence. *Id.* But both of these conclusory allegations by Golie find no support in the record.

To the contrary, the Montana Supreme Court noted reference to "Modern Outlaw" and Murphy's inference of gang activity was not only limited in scope but was also rebutted by both Golie and his wife. Additionally, Golie was the one who first used the term "brother," thus, it was a fair line of inquiry given the purported implications of the statements Golie made in conjunction with the use of this term. Golie's interaction with the Edmondson's was the focus of the criminal charges and trial. Brownlee's decision to address this issue during Golie's direct exam, and have him confront and explain the issue himself, was not unreasonable. There are "countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way."

13

*Strickland*, 466 U.S. at 689. Brownlee's performance was objectively reasonable. Accordingly, there is no basis under AEDPA to find the Montana Supreme Court applied *Strickland* to Golie's case in an objectively unreasonable manner. See, *Bell*, 535 U.S. at 699. This claim should be denied.

### iii.    Claim 3- Failure to Object to Vouching Testimony

Prior to trial, Brownlee obtained a motion in limine prohibiting the State's witnesses from offering testimony regarding the credibility of another witness. *Golie*, 2017 MT 191, ¶30. Despite this order, Detective Murphy offered the following testimony, without objection from Brownlee, explaining why he took the allegation that Golie threatened Edmondson seriously:

> The interviews that were conducted separately with [Edmondson], [Chaffin] and Logan [Brown] provided a lot of credibility because, you know, although their statements were given separately, there was a lot of consistency to what they had to say.
>
> The other part of that is Mr. Edmondson was clearly extremely afraid. Mr. Edmondson- you know, I believe that during his interview with Officer Auch I think he had said that he was tearing up. And the fears- the statements that he provided that he was afraid of things weren't- they weren't- they weren't what I would commonly expect somebody to say if they weren't telling the truth.
>
> All someone has to do to accuse someone of intimidating them, for instance, is say he threatened to kill me. Okay, that would probably meet the element of that crime given the situation. Mr. Edmondson's statements were very detailed down to I believe he had stated that Mr. Golie had event threatened his dogs. And his fears were very articulated as well.

> [Edmondson's wife] talked about going out and taking her keys out of
> her vehicle and locking the doors. They talked about locking their
> doors for the first time in a long time. These are things that struck me
> as being truthful statements because it's not commonplace for
> somebody that's fabricating that kind of events to come up with all the
> details that you do when you are actually living a chain of events.

*Id.* at ¶29. During postconviction proceedings, Brownlee agreed that Murphy was

vouching, but explained why she chose not to object:

> [Golie] and I were writing notes and looking at each other because, to
> be honest, at the time we felt like at the time Detective Murphy was
> looking less and less credible by saying this, because the testimony of
> those individuals was very poor and they didn't seem credible at all.
> And again, it seemed like the State kept saying we are not lying, we
> are not lying, really, really, we are not lying, and they didn't seem
> credible on the stand at all. And so when Detective Murphy was
> saying these guys are really, really credible, I was letting him go with
> it, because it seemed like he was making himself look less credible by
> saying that over and over again.

*Id.* at ¶ 30.

Golie argued that Brownlee should have objected and that in failing to do so

be was prejudiced as the detective's vouching invaded the province of the jury. *Id.*

at ¶31. The State responded arguing because Brownlee attacked the credibility of

the State's witness in her opening, the prosecution properly introduced rebuttal

evidence regarding credibility. Further, even if the testimony were improper,

Brownlee had a "reasonable strategic explanation for her decision not to object."

*Id.* Both the state district court and the Montana Supreme Court held that

Brownlee's decision not to object was objectively reasonable. Brownlee's decision

to withhold objection served a legitimate defense purpose and constituted reasonable performance, therefore, she did not provide ineffective assistance. *Id.*

Golie does not explain what was unreasonable about the state court decision, rather he reiterates Brownlee failed to object to Murphy's testimony. (Doc. 6 at 5, ¶14(c)). Golie also seems to imply that Brownlee had no strategic reason for electing not to object. *Id.* But the record before this Court belies Golie's assertion; Brownlee explained her rationale. An attorney possesses wide latitude to make tactical decisions during trial, and such decisions, made after investigation of the law and facts relevant to plausible options are "virtually unchallengeable." *Strickland*, at 689-91. Brownlee's decision not to object to Detective Murphy's testimony, because it conflicted with witness testimony while also undermining his own credibility, constituted reasonable trial strategy. Brownlee's failure to object does not equate to ineffective assistance and under AEDPA this Court must afford deference. The claim should be denied.

### iv.    Claim 4- Reference to Prior Offense/Probationary Status

Apparently, a discussion before the jury regarding the chain of custody for Golie's cell phone occurred between Brownlee, the prosecutor, Detective Murphy, and the trial court. During the discussion, Brownlee mentioned Golie informed her the phone had been released to his probation officer. While Golie was on the

16

witness stand, Brownlee elicited the following testimony:

> Brownlee:   One other real quick question: I mentioned, which I shouldn't
> have, but you were on probation in Missoula.  That was a
> misdemeanor probation for DUI, correct?
>
> Golie:   Yes, Ma'am.
>
> Brownlee:   Thank you.  No further questions.

*Golie*, 2017 MT 191, ¶24.

Golie argued Brownlee's revelation that he was on probation prejudiced him

in the eyes of the jury because "it aroused the jury's sympathy and negative

feelings toward convicted criminals and DUI without regard to its utter lack of

probative value." *Id.* at ¶25.  The State argued reference to a non-violent traffic

offense did not cause prejudice because the jury would be able to distinguish

between that offense and the criminal charges Golie was facing.  The State also

argued the jury was instructed on the permissible uses of evidence of other crimes,

wrongs, or acts. *Id.*

Brownlee had been granted a motion in limine regarding Golie's criminal

history.  In her postconviction testimony, she noted it was error for her to reference

Golie's status as a probationer, but explained her decision to have Golie address

the issue from the witness stand, "[a]t the time the strategy in my head to maybe

mitigate what they were thinking about Mr. Golie, because I thought if their mind

raised then about what he had done before, I thought it was better to maybe get it

17

on the record that it was a misdemeanor and it was something- not a serious

offense." *Id.* at ¶26.

The Montana Supreme Court determined Golie failed to demonstrate that the

passing reference to probation affected the outcome of the proceeding.  The Court

held that unlike the criminal offenses of Witness Tampering and Intimidation,

misdemeanor DUI constituted a nonviolent traffic offense distinguishable from the

charges Golie was facing at trial.  *Id.* at ¶27.  The Court held any potential

prejudice of the disclosure was mitigated by the jury instructions which limited

consideration of other crimes, wrongs, or acts.  *Id.*

Even if this Court were to presume that by revealing Golie's probationary

status, Brownlee performed deficiently, it does not follow that Golie was

prejudiced.  As set forth above, Golie must show that, but for this error, there exists

a reasonable probability that the result of the proceeding would have been

different.  See, *Strickland*, 466 U.S. at 694.  That is, only when "[t]he likelihood of

a different results [is] substantial, not just conceivable," has the defendant met

*Strickland's* demand that defense errors were "so serious as to deprive the

defendant of a fair trial." *Harrington*, 131 S. ct. at 792 (quoting *Strickland*, 466

U.S. at 687).  Under AEDPA, this Court is required to consider whether the

Montana Supreme Court's conclusion that Golie suffered no prejudice was

reasonable.  The state court decision must be upheld if "fair-minded jurists could

18

disagree" as to whether or not the decision was correct. *Id.* at 786.

Applying this standard, the conclusion must be drawn that the state courts reasonably determined that Golie was not prejudice by Brownlee's reference to Golie's probationary status and subsequent attempt to recall Golie in order clarify the type and scope of probation. The jury acquitted Golie of the Intimidation charge, so Golie's argument that the passing reference aroused the jury's negative feelings toward criminals apparently did not affect their decision to acquit him of one of the counts. Moreover, this fact supports the state court's finding that the jury instructions served to mitigate any negative effect of the disclosure. This claim should also be denied.

### v.   Claim 5- Cumulative Error

Golie did not present this claim to the state courts, but at this juncture it matters not. Because Golie is unable to establish a single constitutional error in this case, there is nothing to accumulate to the level of a constitutional violation. *See Mancuso v. Olivarez*, 292 F. 3d 939, 957 (9th Cir. 2002). This claim should be denied.

### V.   Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules governing § 2254

Proceedings. A COA should issue as to those claims on which a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Where a claim is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012) (quoting *Slack*, 529 U.S. at 484).

Golie has not made a substantial showing that he was deprived of a constitutional right. Accordingly, this Court must afford deference to the Montana Supreme Court's resolution of Golie's IAC claims under the doubly deferential standards required by the application of 28 U.S.C. § 2254(d) and *Strickland*. Moreover, Golie has not demonstrated a constitutional violation resulted from cumulative error. Thus, there are no close questions and there is no reason to encourage further proceedings in this Court and reasonable jurists would find no reason to dispute this Court's procedural ruling. A certificate of appealability should be denied.

Based on the foregoing, the Court enters the following:

**RECOMMENDATION**

1. Golie's Amended Petition (Doc. 6) should be DENIED.

2. The Clerk of Court should be directed to enter judgment in favor of Respondent and against Petitioner.

3. A certificate of appealability should be DENIED.

**NOTICE OF RIGHT TO OBJECT
TO FINDINGS & RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT**

Mr. Golie may object to this Findings and Recommendation within 14 days.[7] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

Mr. Golie must immediately notify the Court of any change in his mailing address. Failure to do so may result in dismissal of his case without notice to him.

DATED this 19th day of July, 2019.

*/s/ Jeremiah C. Lynch*
Jeremiah C. Lynch
United States Magistrate Judge

---

[7] Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)." Therefore, since Golie is being served by mail, he is entitled an additional three (3) days after the period would otherwise expire.